**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED AIR LINES, INC., <br><br> Plaintiff, <br><br> v. <br><br> AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, et al., <br><br> Defendants. | Civil Action No. |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR
EXPEDITED DISCOVERY**

In this action, United Air Lines, Inc. ("United" or the "Company") seeks declaratory and injunctive relief against the Air Line Pilots Association, International ("ALPA"), which represents pilots at United through the United Air Lines Master Executive Council ("MEC"); members of the MEC's Industrial Relations Committee ("IRC") Steven Tamkin ("Tamkin"), Robert Domaleski ("Domaleski"), Xavier Fernandez ("Fernandez"), officers and members at United; and an individual United pilot, Anthony Freeman ("Freeman") (collectively, "Defendants") for violation of Section 2, First of the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.* (the "RLA"). In its Emergency Motion for Expedited Discovery, United seeks an order allowing expedited discovery of the Defendants to obtain evidence of their complicity in an ongoing "sick out" among certain United pilots so that such evidence may be presented at a hearing on United's motion for preliminary injunction.

The factual basis for United's request for expedited discovery against the Defendants includes circumstantial evidence that a secretive committee of ALPA's MEC, known as the

Industrial Relations Committee, of which Captains Tamkin, Domaleski and Fernandez are members, has been involved with Mr. Freeman in planning and directing an ongoing "sick-out" among certain of United's junior pilots in violation of the RLA.  This evidence includes a considerable amount of circumstantial evidence that Mr. Freeman administers and maintains a private, password-protected Internet website at "www.ual2172.com," that has been used by Mr. Freeman and others to facilitate communications among a group of junior United pilots known as the "2172," including communications orchestrating a concerted "sick out" in violation of the RLA.  This evidence also includes ALPA e-mail and flight records strongly suggesting that Mr. Freeman met with the three members of the IRC on or about June 12, 2008, in Los Angeles.

There is undisputed evidence that ALPA, and its MEC, has orchestrated a campaign by certain United pilots to reject voluntary flight assignments to put pressure on United in violation of the RLA; those actions alone compel issuance of a preliminary injunction.  While ALPA has denied any knowledge of, or complicity in, a sick-out by certain junior United pilots that has caused 329 flight cancellations in less than 10 days, inconveniencing some 36,000 of United's customers, United believes that expedited discovery will produce direct evidence of a concerted sick-out and the Defendants' involvement in planning and condoning those actions.

It is critical that United be permitted to seek this discovery on an expedited basis to allow United's Motion for Preliminary Injunction to be heard as soon as possible because, without issuance of a preliminary injunction, United and the traveling public both face continued – and perhaps accelerated – flight delays, cancellations or other disruptions of United's operations.  It is also critical that the Court put the individual defendants on notice immediately that relevant materials cannot be destroyed, either intentionally or in the normal course of operations.

The discovery United seeks is narrowly targeted by subject matter and time frame so that it can easily be supplied within a few days of this motion. With regard to ALPA, United seeks permission to propound discovery requests requiring ALPA to provide United with (1) any documents, including messages, articles, letters, updates, notices or similar materials posted on any website maintained or used by ALPA or the IRC to which United pilots have password-protected access that reference "sick," "illness," "leverage," "fatigue," "pressure," or similar terms since June 1, 2008, including any such materials that were posted on its website, but have since been removed; (2) any communications, including voice messages, text messages, code-a-phone messages or e-mails sent between ALPA or the IRC and United pilots that reference "sick," "illness," "leverage," "fatigue," "pressure," or similar terms since June 1, 2008; (3) any communications, including electronic communications, between ALPA, including ALPA officers or committee members, and Mr. Freeman, since June 1, 2008, that include the words "sick," "illness," "leverage," "fatigue," "pressure," or similar terms; (4) any documents, including correspondence, records, plans or notes since June 1, 2008, that address job actions planned or contemplated by members of the 2172; and (5) any documents, including correspondence, records, plans or notes that relate to meetings between Mr. Freeman and members of the IRC since June 1, 2008.

With regard to Captains Tamkin, Domaleski and Fernandez, United seeks permission to propound discovery requests requiring each of them to provide United with (1) any documents which refer or relate to any plan, request or other action by any of the Defendants, or any pilots employed by United, to instigate, authorize, encourage, participate in, approve or continue any strike, work stoppage, sick-out, slowdown, work to rule campaign, refusal to accept junior/senior manning, refusal to perform normal flight operations, or any other form of interference with

3

United's normal airline operations since June 1, 2008; (2) any documents, including messages, articles, letters, updates, notices, voice messages, text messages, code-a-phone messages, e-mails or similar materials sent to United pilots from any of the Defendants that reference "sick," "illness," "leverage," "fatigue," "pressure," or "junior/senior manning" or similar terms since June 1, 2008; and (3) any documents, including correspondence, records, plans or notes that relate to meetings between Mr. Freeman and members of the IRC since June 1, 2008.

With regard to Mr. Freeman, United seeks permission to propound discovery requests requiring him to provide United with (1) access to the website located at www.ual2172.com; (2) any documents, including messages, articles, letters, updates, notices or similar materials or information posted on that website since June 1, 2008, but that have since been removed; (3) any communications, including electronic communications, between Mr. Freeman and other United pilots since June 1, 2008, including ALPA officers or committee members, that include the words "sick," "illness," "leverage," "fatigue," "pressure," or similar terms; (4) any documents, including correspondence, records, plans or notes, in Mr. Freeman's possession that describe actions planned or contemplated by members of the 2172 since June 1, 2008; and (5) any documents, including correspondence, records, plans or notes that relate to meetings between Mr. Freeman and members of the IRC since June 1, 2008. United also seeks permission to inspect and test Mr. Freeman's computer and data storage devices.

Finally, United seeks permission to take the depositions of Mr. Freeman and the three IRC committee members, upon notice of no less than three calendar days, and an order prohibiting the individual defendants from destroying or deleting any relevant materials in their possession, custody, or control while this lawsuit is pending.

**STATEMENT OF FACTS**

A.   **ALPA's Efforts to Disrupt United's Operations in Violation of Railway Labor Act.**

This lawsuit arises out of campaign by ALPA to put economic pressure on United in order to force United to renegotiate a five-year labor contract that was executed during United's bankruptcy in 2005, and which runs through December 31, 2009.  (Declaration of Jay Milone ("Milone Decl.") at ¶¶ 6, 10).  As set forth in more detail in United's Complaint for Declaratory and Injunctive Relief and Motion for Preliminary Injunction, ALPA began in December 2006 to encourage its pilots to adhere strictly to contractual requirements, to refuse to accept voluntary flight assignments (known as "junior/senior manning") allowed under the current contract, and to encourage, or, at a minimum, fail to discourage, various acts of harassment by pilots against other pilots who continued to accept junior/senior manning assignments.  (*Id.* ¶¶ 11, 12, 27-28.)  In addition to ALPA's express directives, the Court should take into account that ALPA possesses a large number of confidential communication mechanisms to which United has not had access.   ALPA's elaborate system of communications among its members includes regular meetings in each domicile, contract education/audit desks set up in each domicile, written materials mailed to pilots' homes, telephone "trees," confidential e-mails to the pilots' homes, frequent UAL-MEC updates, internet sites and message boards, and the "Pilot-2-Pilot" communications program.  (*Id.* ¶¶ 9, 29-31, 34-35, Exhs. 4-7.)

As part of its efforts to address its inability to use junior/senior manning effectively without resorting to litigation, United changed its staffing model and increased the number of reserve pilots (based on the percentage of total hours flown) from 13% to 17% at an annual carrying cost of approximately $15 million per year.  (Declaration of Paul Carlson ("Carlson Decl.") ¶ 16.)  However, because of the sick leave abuse discussed below, even United's attempt to work around ALPA's refusal to allow junior/senior manning cannot stop cancellations now.

5

**B.      The Sick-Out Among Certain Junior Pilots Following Furlough Announcements.**

While United has sought for 18 months to resolve its disputes with ALPA over the existing labor agreement, and manage the problems created by ALPA's campaign, the campaign has accelerated since United announced on June 4, 2008, that it would remove 100 aircraft from its fleet because of extraordinarily high fuel costs. (Milone Decl. ¶ 40; (Declaration of Peter McDonald ("McDonald Decl.") ¶ 10.) On June 23, 2008, the Company informed ALPA that this reduction would result in the furlough of 950 active pilots. (McDonald Decl. ¶ 13.)

Since those announcements, United experienced a significant increase in sick calls. For example, in May 2008, the highest number of pilots on United's sick list on any given day was 350; since June 5, 2008, the number on the sick list has jumped by 100 to 150 pilots per day, and more on some days. (Carlson Decl. ¶¶ 11-12.) While United maintains a group of reserve pilots designed to cover a normal number of sick calls, a substantial increase in sick calls can exceed the number of available reserve pilots, and when pilots refuse to accept junior/senior manning requests to cover those open flights, United is forced to cancel flights. (*Id.* ¶¶ 8-10, 14-15.)

This most recent spike in sick leave is largely driven by junior pilots who serve as first officers on United's narrow-body Airbus 320 Boeing 737 aircraft. The sick list has remained significantly above what is considered normal or typical since that time for pilots who fly that aircraft. For example, from June 4, 2008, through July 27, 2008, sick rates among 737 narrow-body first officers has been more than double the average for the past three and a half years. As of July 29, 2008, the narrow-body first officer sick list had not dissipated. (Carlson Decl. ¶ 12.)

**C.      United's Investigation of the Increased Sick Calls.**

Shortly after the surge in flight cancellations on July 18, 2008, United began investigating the increase in sick leave usage to determine its cause. In the course of several days of investigation, United learned the following:

- United's most junior pilots – the 2,172 pilots who were furloughed after September 11, 2001, and had only been recalled in the last couple of years – had begun to call themselves, collectively, "the 2172" or "the UAL 2172."  (Milone Decl. ¶ 54.)

- United's flight department management was informed of statements circulating among the flight crews in recent days that a group of junior pilots were planning to disrupt United's operations through some sort of job action, and had established a website, www.ual2172.com, to coordinate their efforts.  (Milone Decl. ¶ 55.)

- United's corporate security department determined that there was, in fact, a website called www.ual2172.com.  Nothing on the website's homepage indicated its purpose, and entry was limited to registered users who had been approved for access.  The name of the website, however, and the information required to register (e.g., aircraft type and position) appeared to confirm that it was a forum used by junior United pilots to communicate with each other. (Declaration of Benjamin Vaughn ("Vaughn Decl.") ¶ 5.)

- Although the website was registered through an anonymous domain name broker, it uses a bulletin board software system that requires the person setting up the system to specify an e-mail address that will be the source of automated e-mail messages to forum users.  (Vaughn Decl. ¶¶ 5-6.)  The e-mail address used on www.ual2172.com was tpilott@aol.com.  (*Id.* ¶ 8.)

- United's corporate security department searched e-mails sent and received through United's internal e-mail system to determine if tpilott@aol.com had ever used that system, and found several e-mails from tpilott@aol.com.  (Vaughn Decl. ¶¶ 8-9.)  Those e-mails indicated, on their face, that the e-mail address belonged to "Tony Freeman, DEN320 FO," the latter phrase indicating that the author was an A320 first officer in United's Denver domicile.  Moreover, United maintains employee profiles for each of its employees.  United determined that Mr. Freeman's employee profile includes a home e-mail address of tpilott@aol.com, which Mr. Freeman provided to the Company in order to receive United communications.  (*Id.* ¶ 11.)

- With this information, United determined that Anthony Freeman is an A320 first officer in United's Denver domicile, one of the 2172 who had been furloughed, *and* that Mr. Freeman had called in sick from July 12, 2008 through July 18, 2008, the height of the sick-out.  (Vaughn Decl. ¶ 11; Milone Decl. ¶¶ 53-54.)

- In the e-mail sent by tpilott@aol.com and signed by Mr. Freeman, the author plainly disclosed his role in running the www.ual2172.com website, and the purpose of the site.  This e-mail, which was sent on about June 18, 2008, also includes a number of incriminating statements, including:  (1) that the 2172 group was going to "fight for your jobs;" (2) that "summer is our leverage as a pilot group;" (3) that pilots involved in the group should "keep in touch through the tree," presumably a phone tree, because "it's going to get interesting;" and (4) that Mr. Freeman removed postings on a single, unspecified topic because "some things aren't meant for paper or electronic communications."  (Vaughn Decl. ¶¶ 12-13; Exhs. 3, 5.)

7

This information, United concluded, demonstrated that Mr. Freeman was involved in planning actions meant to put economic pressure on United. Based on the fact that the sick-out was concentrated among members of the 2172, and that Mr. Freeman had personally called in sick for six days leading up to a peak day of sick leave usage, United concluded that he had a role in orchestrating the sick-out. Accordingly, United sought to determine if Mr. Freeman's actions had any connection with ALPA. Although Mr. Freeman did not hold any official union position that United could identify, United learned the following:

- On June 5, 2008 – the day after United announced it would eliminate 100 aircraft – an ALPA employee sent United an e-mail asking that Mr. Freeman and three other United pilots be placed on ALPA-leave for several days during the period from June 9 - 17, 2008. ALPA leave is available only for pilots engaged in ALPA business, and ALPA reimburses United for the cost of the leave. (Milone Decl. ¶ 58.)

- The other three pilots, Captains Tamkin, Domaleski and Fernandez, are identified in ALPA publications as MEC Industrial Relations Committee members. (*Id.* ¶ 57.)

- According to the MEC Policy Manual, the IRC is "responsible for insuring that the pilots of United Airlines are in a continuing state of preparedness to respond to Company and industry actions which affect the relations between the pilots and other parties." The Committee's enumerated duties include, "[t]he formulation and implementation of labor actions which will accomplish the goals of the United pilots and the directives of the UAL-MEC." (Milone Decl. ¶ 56, Exh. 17.)

- Although "labor actions" is not defined in the MEC Policy Manual, the IRC's reputation is that of "a secretive wing of ALPA" that was involved in orchestrating the ALPA slowdown against United during the summer of 2000. *See* Roger Lowenstein, *Into Thin Air*, N.Y. Times, Feb. 17, 2002.

- United's flight records show that Mr. Freeman and two of the three members of the IRC traveled to Los Angeles on June 11, 2008, and returned on June 13, 2008; the third member of the IRC lives in the Los Angeles area. (Milone Decl. ¶ 59.)

- United's records also show that the Chairman of ALPA's Strike Preparedness Committee was on ALPA-related leave during the same period, traveled to Los Angeles on June 10, 2008, and returned on June 13, 2008, the same day as Mr. Freeman and the IRC members returned. (Milone Decl. ¶ 59.)

United believes this information creates a strong circumstantial case that Mr. Freeman and the IRC met in Los Angeles on June 12, 2008, and that the purpose of that meeting included

8

planning a sick-out for July 2008. The only way to obtain direct evidence, however, is through expedited discovery.

## ARGUMENT

I. **EXPEDITED DISCOVERY IS APPROPRIATE BECAUSE IT WILL PROVIDE EVIDENCE NECESSARY FOR THE PRELIMINARY INJUNCTION HEARING.**

The case law is clear that the district courts have significant discretion to manage the discovery process, including allowing discovery more quickly than the Federal Rules of Civil Procedure would normally allow. *See*, *e.g.*, *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 624 (N.D. Ill. 2000). Courts have held that "[e]xpedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings." *Ellsworth Assocs., Inc v. United States*, 917 F. Supp. 841, 844 (D.D.C. 1996); *Educ. Comm'n for Foreign Sch. Med. Graduates v. Repik*, No. Civ. A. 99-1381, 1999 WL 317052, at *3 (E.D. Pa. May 17, 1999). The courts have also held that expedited discovery in preparation for a preliminary injunction hearing should be permitted where such discovery will provide the judge with a more complete record upon which to base a judgment on the merits of the parties' claims. *Nobel Biocare USA, Inc. v. Lynch*, No. 99 C 5774, 1999 WL 958501, at *4 (N.D. Ill. Sept. 15, 1999); *Phila. Newspapers, Inc. v. Gannett Satellite Info. Network, Inc.*, No. Civ. A. 98-CV-2782, 1998 WL 404820, at *2 (E.D. Pa. Jul. 15, 1998); *Edudata Corp. v. Scientific Computers, Inc.*, 599 F. Supp. 1084, 1088 (D. Minn. 1984); *aff'd in part, appeal dismissed in part on other grounds*, 746 F.2d 429 (8th Cir. 1984).

In the present case, United anticipates that ALPA and the members of the IRC will oppose United's motion for preliminary injunction on the basis, among others, that the increase in sick leave was a spontaneous reaction among certain junior pilots to United's announcement

9

of fleet reduction and associated furloughs, and that there is no evidence either of concerted action, or that ALPA authorized or directed such action. This is, in fact the position that ALPA has taken before, *see Air Line Pilots Ass'n Int'l v. United Air Lines, Inc.,* 802 F.2d 886, 905 (7th Cir. 1986), and thus will likely take again. While evidence of ALPA's authorization or direction of concerted actions is not necessary to obtain a preliminary injunction, *see United Air Lines, Inc. v. Int'l Ass'n of Machinists & Aerospace Workers*, 243 F.3d 349, 362 (7th Cir. 2001) (union has affirmative legal obligation to stop job action), United's ability to present direct evidence of ALPA's culpability in the sick out will undermine any argument that ALPA might make.

II.   **UNITED'S DISCOVERY REQUEST IS NARROWLY-TAILORED TO COVER ONLY THOSE ITEMS DIRECTLY RELEVANT TO THE DIRECTION, AUTHORIZATION OR RATIFICATION OF THE JOB ACTION.**

Courts have recognized that compelling a defendant to provide significant amounts of discovery in a short period of time may create an unreasonable burden. *See*, *e.g.*, *Merrill Lynch*, 194 F.R.D. at 624 ("[W]here a plaintiff seeks expedited discovery to prepare for a preliminary injunction hearing, it makes sense to examine the discovery request . . . on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances"); *Ellsworth Assocs.,* 917 F. Supp. at 844 (granting "narrowly-tailored" request for expedited discovery). As shown below, United's request for expedited discovery is narrowly targeted to obtain evidence for the preliminary injunction hearing, and can easily be provided within a few days. A copy of United's discovery requests is attached hereto as Exhibit A.

   A.   **Discovery from ALPA.**

**Materials Posted on Password-Protected Areas of ALPA or IRC Websites Containing Specific Words:** This request is designed to determine whether there was specific discussion on union websites about a potential sick out, and includes a request for any such materials that have been recently removed from those websites. This request only requires

ALPA to provide copies of responsive materials that should be available on ALPA's website, computer systems, or storage media.

**Communications between ALPA or the IRC and United Pilots Containing Specific Words:** Like password-protected areas of websites, ALPA communicates through other private means with its members at United. This request simply seeks copies of recent communications, which should be available in hard copy or on ALPA's computer systems or storage media.

**Communications between ALPA and Mr. Freeman Containing Specific Words**: This request is targeted at yet-undiscovered recent communications using language that would be expected in communications regarding orchestrating a sick-out. Such materials should be available in hard copy or on ALPA's computer systems or storage media.

**Materials Describing Actions Planned or Contemplated By Members of the 2172**: Given United's circumstantial evidence that ALPA has knowledge of, and may have been involved in, planning a sick-out, United seeks information regarding ALPA's involvement in or knowledge of, if any, other potential actions being planned by the 2172.

**Materials Relating to Meetings between Mr. Freeman and Members of the IRC:** This same request would be posed to the other Defendants, to ensure full disclosure of all meetings between Mr. Freeman and the IRC, and issues discussed at such meetings.

B.     **Discovery from Captains Tamkin, Domaleski, and Fernandez**

**Materials Relating to Actions to Interfere With United's Normal Airline Operations**: This request seeks only recent documents in the possession of these individual defendants that show what, if any, other potential slowdown or other job actions are being planned by ALPA, the IRC, Freeman, or any other individual pilots employed by United. Given

11

that the request seeks only documents in these individuals' personal possession, responding to this request should be of little burden.

**Documents and Communications Containing Specific Words:** This request simply seeks copies of recent materials in the possession of these individual defendants that reference words that may be used in discussing a sick-out or issues related to the refusal to accept junior/senior manning. Given that the request seeks only documents in these individuals' personal possession, responding to this request should be of little burden.

**Materials Relating to Meetings between Mr. Freeman and Members of the IRC:** This same request would be posed to the other Defendants, to ensure full disclosure of all meetings between Mr. Freeman and the IRC, and issues discussed at such meetings.

**Depositions of Captains Tamkin, Domaleski, and Fernandez**: After obtaining these individual defendants' discovery responses, and prior to the preliminary injunction hearing, United will seek their depositions to obtain further evidence to support its motion. Given that the individual defendants will be immediately on notice that their depositions will occur in the short window before hearing, that United can provide them with the time off necessary to attend such a deposition on short notice, and the necessity of the depositions, such a request is reasonable.

C.   **Discovery from Mr. Freeman.**

**Contents of the UAL2172.Com Website**: This request is designed to determine whether there was specific discussion on the website about a potential sick out. It would create very little burden to respond because all Mr. Freeman need do is provide United's counsel with permission to access to the site.

**Materials since Removed From the UALl2172.Com Website:** This request is targeted at any materials removed from the website, such as materials Mr. Freeman indicated in an e-mail

that he removed from the website because "some things aren't meant for paper or electronic communications." Such materials should be available on Mr. Freeman's computer systems or storage media.

**Communications between Mr. Freeman and Other United Pilots Including Specific Words**: This request is targeted at yet-undiscovered recent communications using language that would be expected in communications regarding orchestrating a sick-out. Such materials should be available on Mr. Freeman's computer systems, e-mail accounts, text messages, and the like.

**Materials Describing Actions Planned or Contemplated By Members of the 2172**: While United has circumstantial evidence of a concerted sick-out, it also has evidence that the 2172 may be planning other concerted actions, including Mr. Freeman's e-mail indicating that "it's going to get interesting;". This request seeks only recent communications that may show what other potential actions are being planned.

**Materials Relating to Meetings between Mr. Freeman and Members of ALPA's Industrial Relations Committee**: United has circumstantial evidence tying Mr. Freeman to the IRC, and believes they have met in person at least once under the ALPA's auspices. This request seeks further evidence of that meeting, and any others, as well as the matters addressed in those meetings. Similar requests would be made of the other Defendants.

**Inspection and Testing of Mr. Freeman's Computer and Data Storage:** This request is targeted at any materials removed from the website, including, for instance, materials Mr. Freeman indicated in an e-mail that he removed from the website because "some things aren't meant for paper or electronic communications." United seeks this material because Mr. Freeman may not himself have the expertise to locate on his computer system and media all such materials that may be available in response to the request for production of documents.

**Deposition of Mr. Freeman**:  After obtaining Mr. Freeman's discovery responses, and prior to the preliminary injunction hearing, United will seek Mr. Freeman's deposition in order to obtain further evidence to support its motion.  Given that Mr. Freeman will be immediately on notice that his deposition will occur in the short window before hearing, that United can provide him with the time off necessary to attend such a deposition on short notice, and the necessity of the deposition, such a request is reasonable.

United's discovery requests seek information necessary to the resolution of the issues before the Court at the preliminary injunction hearing.  They are appropriately narrowly-tailored by subject matter and time period (generally seeking only materials from June 1, 2008 onward) to require little effort on the Defendants' behalf, and therefore will not unduly burden any defendant.  Accordingly, United should be granted expedited discovery of these matters

### III. UNITED'S REQUEST FOR A DOCUMENT PRESERVATION ORDER IS NECESSARY TO ENSURE UNITED HAS ACCESS TO ALL RELEVANT INFORMATION.

United seeks a protective order from this court requiring Captains Tamkin, Domaleski, and Fernandez, and Mr. Freeman to preserve all relevant evidence in their possession, custody, or control for the duration of this litigation.  Given the clear steps Mr. Freeman has taken to keep his communications and website out of the public eye, and the IRC's reputation as the "secretive wing" of ALPA, United has grounds to be concerned that all relevant materials that have heretofore been held in "secret" remain available for discovery, and therefore requests an order from this court enforcing their obligation to maintain such materials.

Federal Rule of Civil Procedure Rule 26(c) authorizes this court, upon a showing of good cause, to "make any order which justice requires to protect a party from . . . oppression or undue burden or expense."  Good cause exists for this court to issue such an order, because: (1) these are individual defendants who may not have independent knowledge of their discovery

14

obligations that would otherwise be known to an entity such as ALPA, *see Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003); and (2) their prior attempts to keep materials relevant to this litigation secret indicate that they may take further steps to prevent the disclosure of such information absent such knowledge. Accordingly, a protective order which sets forth their obligations to preserve evidence is warranted and should issue immediately.

## CONCLUSION

WHEREFORE, United requests that the court order the expedited discovery described herein, be granted, and that the court issue a protective order requiring Captains Tamkin, Domaleski and Fernandez, and Mr. Freeman to preserve all relevant materials.

DATED: July 30, 2008.                                     Respectfully submitted,


By:   s/Gary S. Kaplan
TOM A. JERMAN
APARNA B. JOSHI
MARK W. ROBERTSON
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
(202) 383-5300
e-mail: tjerman@omm.com

GARY S. KAPLAN
SEYFARTH SHAW LLP
131 South Dearborn Street
Suite 2400
Chicago, IL 60603-5577
(312) 460-5000
e-mail: gkaplan@seyfarth.com

Attorneys for Plaintiff
United Air Lines, Inc.